IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-00252-CMA-BNB

JASON LEE RICKERT,

Plaintiff,

v.

REVADA FARNSWORTH, R.N., Boulder County Jail Badge #1524,
CHERI HARVEY, R.N., Boulder county Jail Badge #1581,
PATTI BOOTH, R.N., Boulder County Jail Badge #1507, and
DR. JEREMIAH KAPLAN, M.D., of the Boulder County Jail Medical,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

This matter arises on **Defendants' Motion for Summary Judgment** [Doc. #87, filed 11/18/2013] (the "Motion"). I respectfully RECOMMEND that the be GRANTED.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II. UNDISPUTED MATERIAL FACTS[1]

1. At all times pertinent to the allegations of the plaintiff's Amended Prisoner Complaint [Doc. #20] (the "Complaint"), the plaintiff was incarcerated at the Boulder County Jail. *Complaint*, pp. 5-10.[2]

2. Prior to entering the Boulder County Jail, the plaintiff had been diagnosed and treated for an inflammatory bowel disease called Crohn's disease. *Motion*, Ex. D, ¶¶ 9-10; Ex. Q, ¶ 2; Ex. E.

3. At the time he entered the jail, the plaintiff had an "infusaport" in his chest. An infusaport, like an IV, offers entry into a vein using a special needle. The needle is inserted through the chest skin into a surgically implanted dome or port connected into a catheter threaded into a large vein in the upper chest. Id. at Ex. D, ¶ 7.

4. During his six-month stay in the jail, the plaintiff sent forty-six requests ("kites") for various types of medical care. Id. at Ex. F.

5. The plaintiff requested opiate medication for pain on two separate occasions in October 2012. Id. at Ex. D,¶ 5; Ex. F, p. 1; Ex. G. The plaintiff had a history of abusing drugs including narcotic medications, which precluded Dr. Kaplan from prescribing opiates. Dr.

---

[1]The plaintiff filed a response to the Motion. *Motion: Response to Defendants' Motion for Summary Judgment* [Doc #91] (the "Response"). The Response does not dispute any of the defendants' material fact statements. Nevertheless, under C.D. Mosier v. Maynard, 937 F.2d 1521, 1524 (10th Cir. 1992), a plaintiff's complaint may be treated as an affidavit under Fed. R. Civ. P. 56(e) to the extent it contains statements that are based on personal knowledge and those statements have been sworn as true under penalty of perjury. I have relied on the factual assertions in the Complaint to the extent they are based on personal knowledge.

[2]The Complaint is not consecutively paginated. Therefore, I cite to the page numbers of the Complaint as they are assigned by the court's docketing system.

Kaplan denied the plaintiff's requests and directed medical staff not to give him opioid medications. Dr. Kaplan directed medical staff to continue to manage the plaintiff's pain symptoms, including pain medication administration as needed. Id. at Ex. D, ¶¶ 5-6. Dr. Kaplan prescribed Motrin 800 mg. for pain management. Id. at Ex. H; Ex. I.

6. On November 5, 2012, the plaintiff requested that his infusaport be flushed. Id. at Ex. F, p. 14. Jail Medical Administrator Revada Farnsworth consulted with Dr. Kaplan regarding the request to flush the infusaport. Dr. Kaplan reviewed the request and determined that such a procedure could not be done by the current medical staff and that the procedure was not indicated. Id. at Ex. D,¶ 8; Ex. Q, ¶¶ 8-9.

7. On November 6, 2012, the plaintiff requested that the drug Remicade be administered (through the infusaport) for treatment for his Crohn's disease. Id. at Ex. F, p. 15. Ms. Farnsworth consulted with Dr. Kaplan regarding the plaintiff's request for Remicade. Dr. Kaplan advised that Remicade should not be given because, in his medical opinion, the jail was not set up to provide medication through an infusaport, and Remicade was not indicated for treatment of the plaintiff's Crohn's disease. Remicade was not indicated because the plaintiff was receiving oral methotrexate for treatment of his illness, and the methotrexate was sufficiently controlling his illness. Id. at Ex. D, ¶¶ 9-10; Ex. Q, ¶¶ 10, 12.

8. On December 8, 2012, Deputy Anthony Hollonds witnessed the plaintiff picking and digging at the site of his infusaport to the extent that it began to bleed onto his t-shirt. Id. at Ex. L, ¶¶ 3-5. A large band-aid was provided to the plaintiff for the port site. Id. at Ex. M.

9. Dr. Kaplan examined the plaintiff on December 11, 2012, and noted that his infusaport site was inflamed and reddened, and the tip of the port was visible. Dr. Kaplan

advised the plaintiff that since the port was not being used and he was picking at it, it should be removed. Id. at Ex. D, ¶ 11.

10. The port was successfully removed surgically on December 12, 2012, by Dr. Susan Hagen who provided follow-up directions for his care. Id. at Ex. D, ¶ 12; Ex. N, ¶¶ 3-4.

11. Dr. Kaplan inspected the port removal site on December 18, 2012, and ordered daily inspections of the site. Id. at Ex. D, ¶ 13.

12. Dr. Kaplan examined the port removal site again on December 20, 2012, and noted some redness of the skin at the site. He prescribed antibiotics as a precautionary measure. Id. at Ex. D, ¶ 14.

13. Nurse Anne Reeder contacted Dr. Kaplan on December 23, 2012, because the plaintiff complained of pain at his port removal site. Nurse Reeder reported that his blood pressure, pulse, and temperature were normal, and the incision site did not appear infected. Dr. Kaplan recommended removal of the plaintiff's sutures and to reassess the site if the plaintiff continued to complain of pain. Id. at Ex. D, ¶ 15.

14. In accordance with Dr. Kaplan's instructions, Nurse Reeder removed the sutures on December 23, 2012, and bandaged the site. Id. at Ex. D, ¶ 16; Ex. O.

23. The plaintiff left the Boulder County Jail and was transferred to the Denver Diagnostic Reception Center ("DRDC") on March 22, 2013. Id. at Ex. P.

**III. ANALYSIS**

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The plaintiff asserts that the defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment when they refused to maintain his infusaport; denied him "his" pain medication; and denied his requests for administration of Remicade through the infusaport to treat his Crohn's disease.[3] *Complaint*, pp. 3-10. The defendants seek summary judgment on all of the plaintiff's claims.

The defendants state that the plaintiff's claims should be analyzed under the Due Process Clause because he was a pretrial detainee[4] at the time he was incarcerated at the Boulder County Jail. *Motion*, p. 8, n. 1. However, they also provide evidence that the plaintiff is a convicted person who was incarcerated at the Boulder County Jail after violating the terms of his probation. Id. at Exs. A, B, and C. Regardless of the plaintiff's status, the Tenth Circuit Court of Appeals has stated that although pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, "this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983." Lopez v. LeMaster, 172 F.3d 756, 759 n. 2 (10th Cir. 1999).

---

[3]Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

[4]A pretrial detainee is a person who has been charged with a crime but has not yet been tried on the charge. Bell v. Wolfish, 441 U.S. 520, 523 (1979).

A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." Id. at 104-05. A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)). A prison official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

There is no evidence to create a material fact dispute that any of the defendants were aware of and disregarded a substantial risk of serious harm to the plaintiff regarding the maintenance of his infusaport; the administration of pain medications; or the administration of medication to treat his Crohn's disease. It is undisputed that the Crohn's disease was being controlled sufficiently with methotrexate and that the infusaport was not needed to treat his Crohn's disease. It is also undisputed that the port removal site was inspected frequently, and antibiotics were prescribed as a precautionary measure to prevent infection at the removal site. Further, it is undisputed that the plaintiff was provided with Motrin for his pain. The plaintiff does not allege that he took the Motrin on any specific occasion, then informed the defendants that it did not provide pain relief. He simply alleges generally that narcotics are necessary to

treat his medical conditions. Although it is apparent that the plaintiff disagrees with Dr. Kaplan's assessment of his need for the infusaport, the Remicade, and narcotic pain medications,"a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 811 (10th Cir. 1999).

The plaintiff alleges that the infusaport was necessary, not only to administer Remicade but as a lifesaving measure:

> Also I needed my infusaport due to the fact that I have a medical history of going into septic shock. Without my infusaport if I go into septic shock the emergency room nurses and doctors wouldn't be able to give me the life saving medications that I would need in order to save my life. That's the main reason for this case is because they deliberately caused damage to a life saving piece of equipment that was inside my chest that I really needed to have . . . .

*Complaint*, p. 4.

However, the plaintiff does not allege that he informed any of the defendants that the infusaport was necessary as a life saving device in the event of septic shock. Indeed, although the plaintiff submitted numerous kites seeking to have his infusaport flushed, he never mentioned that the infusaport was in place to administer life saving drugs in the event of septic shock.[5] *Motion*, Ex. F, pp. 14, 16-23, 31-32. The plaintiff has not provided any evidence to

[5]The plaintiff alleges that he told defendant Farnsworth that "I get Remicade through [the infusaport] and also its there for life saving medications." *Complaint*, p. 5. The Complaint does not contain any allegations that he told the defendants he had a history of going into septic shock and that the infusaport was required to receive life saving medications in the event he went into septic shock.

show that the defendants were deliberately indifferent to a risk of death from not maintaining the infusaport.

## IV. CONCLUSION

I respectfully RECOMMEND that Defendants' Motion for Summary Judgment [Doc. #87] be GRANTED.[6]

Dated April 14, 2014.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge

[6]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).