**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-00252-CMA-BNB

JASON LEE RICKERT,

      Plaintiff,

v.

REVADA FARNSWORTH, R.N., Boulder County Jail Badge #1524,
CHERI HARVEY, R.N., Boulder County Jail Badge #1581,
PATTI BOOTH, R.N., Boulder County Jail Badge #1507, and
DR. JEREMIAH KAPLAN, M.D., Boulder County Jail Medical,

      Defendants.

---

**ORDER ADOPTING AND AFFIRMING APRIL 14, 2014
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

      This case was referred to United States Magistrate Judge Boyd N. Boland pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  (Doc. # 29.)  On November 18, 2013, Defendants filed a Motion for Summary Judgment.  (Doc. # 87.)  On April 14, 2014, Judge Boland issued a Recommendation granting Defendants' Motion.  (Doc. # 96.)  Plaintiff filed timely objections to Judge Boland's Recommendation.  (Doc. ## 98, 99.)

      When a magistrate judge issues a recommendation on a dispositive matter, a district court judge is required to "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).  The Court has conducted a *de novo* review of this matter, including reviewing all relevant pleadings, the Recommendation, and Plaintiff's

objections.  In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). Based on this *de novo* review, this Court concludes that the magistrate judge's Report and Recommendation is correct and is not called into question by Plaintiff's Objections.[1]

## I.  **BACKGROUND**

Plaintiff suffers from Crohn's disease, an inflammatory bowel disease that causes, among other things, abdominal pain, diarrhea, vomiting, and weight loss. At the time he filed the instant complaint, Plaintiff was detained at the Boulder County Jail and received medical treatment from the four Defendants: (1) Revada Farnsworth, R.N., who responded to the majority of Plaintiff's kites and worked with jail staff regarding Plaintiff's medical treatment; (2) Dr. Jeremiah Kaplan, M.D., who was the Doctor responsible for Plaintiff's treatment, prescribed Plaintiff's medications, and determined Plaintiff's necessary medical treatment; (3) Cheri Harvey, R.N. and (4) Patti Booth, R.N., who were nurses also responsible for treating Plaintiff.  (Doc. # 20 at 3-9.)

As relevant here, the undisputed facts establish that there were two ways to treat Plaintiff's Crohn's disease: orally with a drug called methotrexate and intravenously through injections into a device called an "infusaport," which is implanted in a patient's chest.  (Doc. ## 87-4, 87-6 at 12.)  Health care providers may supplement either course

---

[1] In light of Plaintiff proceeding *pro se*, this Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt.*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, this Court should not be the *pro se* litigant's advocate, nor should this Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir.1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

of treatment with pain relievers if necessary.  *See* (Doc. ## 20 at 3, 9-12; 87-4; 87-6; 99 at 3-5.)

Defendants decided to treat Plaintiff's disease with methotrexate and to provide him with only over-the-counter pain relievers, such as Motrin.  (Doc. ## 87-4, ¶ 8; 87-6 at 15; 87-18, ¶¶ 8-9.)  Defendants also had Plaintiff's infusaport surgically removed after they saw Plaintiff picking at it and observed that the area around the infusaport had become inflamed and bloody.  (Doc. ## 87-6, ¶ 11; 87-13, ¶¶ 3-5.)

As a result, Plaintiff filed the instant lawsuit, arguing that the methotrexate-based treatment was inappropriate, that Defendants acted improperly by failing to "flush"[2] his infusaport, and that Defendants should have given him stronger (narcotic) pain relievers.  (Doc. ## 20 at 3-5; 87 at 9-10.)  In turn, Defendants filed a summary judgment motion, in which they argued there was no dispute that: (1) methotrexate was an appropriate treatment course, (2) it was not necessary to flush the infusaport with the frequency suggested by Plaintiff, and (3) that they were justified in removing the infusaport because Plaintiff kept picking at the device.  (Doc. ## 87 at 9-11; 87-6; 87-16.)

The Magistrate Judge decided that there were no genuine disputes of material fact and that Defendants' treatment course was appropriate and did not deny Plaintiff his Constitutional protections.  (Doc. # 96.)  Plaintiff advances a number of objections to the Magistrate Judge's analysis which the Court discusses below.  (Doc. ## 98, 99.)

---

[2] The parties have not explained how one "flushes" an infusaport.  While the process is left undefined in briefing before this Court, it is not necessary to address the issues relevant to the instant motion.

## II. ANALYSIS

To prevail on his claim that Defendants' medical care violated his constitutional rights,[3] Plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005). To establish deliberate indifference, Plaintiff must show that: (1) objectively, he was deprived of a medical need that is "sufficiently serious," and (2) subjectively, Defendants knew of and disregarded "an excessive risk to [Plaintiff's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Meeting this standard requires establishing more than mere negligence in treatment. Indeed, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005). Relatedly, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999).

Finally, in reviewing Defendants' motion for summary judgment, this Court must determine whether the record discloses "no genuine issue as to any material fact."

---

[3] It is unclear whether Plaintiff's claims are based on violations of the Eighth Amendment or the Due Process Clause. The government alleges that Plaintiff was a pretrial detainee, and thus cannot be subject to any form of "punishment" cruel and unusual or otherwise, under the Eighth Amendment. Instead, pretrial detainees are protected under the Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520, 535 & nn.16-17 (1979). At the same time, in any case, the source of the constitutional protections makes little difference in this circuit: while "[p]retrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, . . . this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002). Further, no matter what the claim, it fails for the reasons that follow.

Fed. R. Civ. P. 56(c).  The Court looks to the factual record and makes reasonable inferences to be drawn in the light most favorable to the non-moving party.  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The plaintiff must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment."  *Id.*  "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).  In other words, "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings."  *Id.*

The Magistrate Judge correctly applied this standard to the facts presented in the record by the parties.  *See* (Doc. # 96.)  Defendants justified the medical decisions that they took with regard to Plaintiff's care by supplying affidavits that detailed the reasons they opted for their preferred treatment course.  (Doc ## 87-4, 87-15, 87-16, 87-22.) In particular, they justified their decision not to use the infusaport because it was not necessary for the treatment of Plaintiff's disease and was impossible to administer by the medical staff at the jail.  (Doc. ## 87-4, ¶¶ 9-10; 86-6 at 16; 87-18, ¶¶ 10, 12.) Defendants further established they needed to remove Plaintiff's infusaport in light of the inflammation and bleeding Plaintiff caused around the device and the infusaport had become useless to Plaintiffs treatment regime.  (Doc. ## 87 at 9-11, 87-6, 87-16.) Finally, Defendants assert that Plaintiff's pain was adequately treated by the over-the-counter pain relievers and that Plaintiff had a history of abusing drugs, including narcotic medications, which precluded them from prescribing stronger opiate pain relievers. (Doc. # 87-4, ¶¶ 5-6.)

Plaintiff provides nothing more than conclusory and speculative arguments to dispute the justifications that Defendants offered for the decisions they took in administering his medical care.  This is insufficient for purposes of defeating this summary judgment motion.

Moreover, Plaintiff's objections to the Report and Recommendation are equally unavailing.  (Doc. ## 98, 99.)  The Court considers each of these objections in turn.[4]

First, Plaintiff suggests that he was prejudiced by the fact that Defendants attached portions of his criminal record as exhibits to their summary judgment motion.  (Doc. # 98.)  Plaintiff argues that these documents are irrelevant to determining whether or not he was denied adequate medical care, and this evidence irrevocably prejudices the manner in which this Court assesses his claims.  (*Id.*)

Plaintiff is correct that his past criminal history is largely irrelevant to this Court's determination as to whether Defendants violated his constitutional rights.  Plaintiff's evidentiary concerns about the prejudice caused by a prior criminal conviction are not implicated at this stage of proceedings because no jury is called upon to weigh evidence.  Further, this Court is perfectly capable of separating the wheat from the chaff in terms of relevant evidence: aside from confirming that Plaintiff is currently incarcerated—which is necessary for determining the scope of his constitutional rights— this Court has not considered this evidence for any other purpose and finds that the type of crime for which Plaintiff was convicted is wholly irrelevant to the instant analysis.

---

[4]  Plaintiff's presentation of his objections is rather disorganized—many arguments seem to overlap and some are incomprehensible to this Court.  What follows is this Court's best attempt to categorize Plaintiff's objections.

Second, in his objections to the Recommendation, Plaintiff vaguely alleges that he has evidence undermining many of the claims made by Defendants in their summary judgment motion.  (Doc. # 99 at 2.)  He concludes that in light of this evidence it would be improper to grant the motion.  (*Id.*)

This argument also fails.  The mere allegation that one possesses evidence that undermines a claim made in a summary judgment motion is insufficient to create a genuine dispute.  Rather, as noted above, "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings."  *Crum*, 439 F.3d at 1230.  The same holds true for unsubstantiated (and vague) allegations about evidence disproving a claim made by Defendants.

Third, Plaintiff attacks the basis for Defendants' determination that he could not receive pain medication: in Plaintiff's telling, Dr. Kaplan received this information from a doctor whom Plaintiff had previously "fired" for not doing her job in treating his Crohn's disease.  (Doc. # 99 at 2-5.)  Plaintiff concludes that the other doctor's assessment of his addiction to pain medication should be accorded little weight because of her alleged bias.  (*Id.*)

This argument is also unpersuasive.  Even assuming that Dr. Kaplan's basis for not providing stronger pain medication was insufficient, Plaintiff has not demonstrated that his need for the stronger medication was "sufficiently serious" or the failure to prescribe this medication caused an "excessive risk" to Plaintiff's health or safety.  Further, Plaintiff has not established that Defendants "knew of" and disregarded the apparent risk created by the failure to prescribe narcotics.

Fourth, Plaintiff argues that the reason his infusaport was not flushed while he was in jail was because the nurses lacked the proper qualifications and that, accordingly, he should have been sent to a different facility with medical personnel capable of performing the flushing procedure.  (Doc. # 99 at 9-11.)  Defendants concede—and the evidence establishes—that they were unable to flush the infusaport themselves and did not have the resources to send Plaintiff to a different facility for this procedure; thus, Plaintiff's port was not immediately flushed upon request.  *See* (Doc. ## 87-6 at 16; 87-16.)  Plaintiff appears to argue that Defendants' failure to follow this course of conduct—and to remove the port rather than continue to use it—violated his constitutional rights.  (Doc. # 20 at 3-10.)

This argument does little for Plaintiff because he has merely established that he "disagrees with a diagnosis or a prescribed course of treatment," which is insufficient to establish a constitutional violation.  *Perkins*, 165 F.3d at 811.  However, Plaintiff has failed to establish that the failure to flush the port was "sufficiently serious" or exposed Plaintiff to excessive risk, such that he was deprived of his constitutional rights.

Relatedly, the undisputed evidence establishes that Defendants' decision to remove Plaintiff's infusaport did not expose Plaintiff to risks that would cause a constitutional violation.  In light of Defendants' inability to flush the port, Defendants devised a plan for the maintenance of the port.  (Doc. # 87-6 at 16.)  During this time, Plaintiff did not report any pain or symptoms as a result of his port not being flushed.  *See* (Doc. ## 20, 87-6.)  As soon as Defendants noticed redness and swelling, they promptly removed the port.  (Doc. ## 87-4, ¶ 11-12; 87-16.)  Following the removal of the port, Defendants properly cared for Plaintiff by frequently inspecting the removal

site, and prescribing antibiotics as a precaution to prevent infection.  (Doc. ## 87-4,

¶ 13-14; 87-15.)

In sum, Plaintiff raises no genuine, material dispute to the quality of his care

before or after the surgical removal of the infusaport.

### III. CONCLUSION

Accordingly, it is hereby ORDERED that Plaintiff's objections (Doc. ## 98, 99)

are OVERRULED, it is

FURTHER ORDERED that Plaintiff's Motion for an Extension to File Objections

to Recommendation of Summary Judgment by Recommendation of United States

Magistrate Judge (Doc. # 97) is DENIED as moot, it is

FURTHER ORDERED that the Recommendation of United States Magistrate

Judge Boyd N. Boland (Doc. # 96) is AFFIRMED and ADOPTED as an Order of this

Court.  Pursuant to the Recommendation, it is

FURTHER ORDERED that Defendants' Motion for Summary Judgment (Doc.

# 87) is GRANTED, it is

FURTHER ORDERED that the claims against Defendant are DISMISSED WITH

PREJUDICE, it is

FURTHER ORDERED that the case is DISMISSED in its entirety.

DATED:  June __09__, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge